1999 SD 125

**Theodore Dean NEW, Applicant and Appellant,**

v.

**Douglas WEBER, Warden of the South Dakota State Penitentiary, Appellee.**

No. 20530.

Supreme Court of South Dakota.

Considered on Briefs Jan. 14, 1999.

Decided Sept. 15, 1999.

569

Dwight A. Gubbrud, Belle Fourche, for applicant and appellant.

Mark Barnett, Attorney General, Jeffrey P. Hallem, Assistant Attorney General, Pierre, for appellee.

KONENKAMP, Justice.

[¶ 1.] Theodore New appeals the denial of his application for a writ of habeas corpus based on ineffective assistance of counsel. New asserts that various tactics employed by his trial attorney resulted in deficient representation. The circuit court found otherwise and we affirm.

## Facts

[¶ 2.] In the early morning of April 8, 1993, John Mousseaux was brutally beaten to death with a tire iron and a hammer on a rural Meade County road. Larry Black Bear, Augustine White Horse and New were all present at the time. New later denied any involvement. Black Bear and White Horse were arrested after they returned to South Dakota following an attempt to evade authorities. Black Bear confessed to his part in Mousseaux's death and pleaded guilty to first-degree manslaughter. While in the Meade County Jail, Black Bear and White Horse devised a plan to "get White Horse off" and to "frame" New for the death of Mousseaux in retaliation for New's cooperation with the authorities in their investigation of Mousseaux's death. Their scheme was not uncovered until after White Horse's murder trial.[1] White Horse was acquitted of causing Mousseaux's death, but later pleaded guilty to being an accessory to first-degree murder for his involvement in the crime.

[¶ 3.] New was charged with first and second-degree murder, first-degree manslaughter, and kidnapping. After a jury trial, at which New was represented by attorney Russell Molstad, New was convicted of second-degree murder under SDCL 22–16–7. New appealed his conviction and we affirmed. *See State v. New*, 536 N.W.2d 714 (S.D.1995). New filed a pro se habeas petition in Meade County circuit court, asserting ineffective assistance of counsel and insufficiency of evidence to support the conviction. After appointment of counsel, and the filing of an amended petition, an evidentiary hearing was held in June 1997. At the completion of this hearing, a second amended application for writ of habeas corpus was filed to "fully accommodate the issues that arose during the evidentiary hearing." The State argued that New had not been deprived of effective assistance of counsel

per the standards set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). The State also contended that various exhibits, witness testimony and physical evidence supported New's conviction, and that New did not present any newly discovered evidence.

[¶ 4.] The circuit court denied New's application for writ of habeas corpus. Also denied were his requests for reconsideration and certificate of probable cause. We granted a probable cause certificate and this appeal followed. He contends he was denied effective assistance of counsel because his trial attorney (1) "opened the door" for and did not properly object to evidence of White Horse's acquittal; (2) failed to request an instruction explaining the significance of White Horse's acquittal; (3) disregarded evidence that White Horse had recently beaten another person to death; (4) disregarded impeachment evidence against Black Bear; (5) failed to object to admission of the guilty pleas of the two codefendants; and (6) failed to request a cautionary instruction on the disposition of the codefendants' cases. Lastly, New asserts that if these errors did not individually prejudice his case, their cumulative effect constituted ineffective assistance of counsel.

## Standard of Review

[¶ 5.] Review of habeas corpus proceedings is limited because it is a collateral attack on a final judgment. *Lien v. Class*, 1998 SD 7, ¶ 10, 574 N.W.2d 601, 606 (citing *Black v. Class*, 1997 SD 22, 560 N.W.2d 544). It is not, therefore, a substitute for direct review. *Loop v. Class*, 1996 SD 107, ¶ 11, 554 N.W.2d 189, 191 (citing *Two Eagle v. Leapley*, 522 N.W.2d 765, 767 (S.D.1994)). We have noted:

Habeas corpus can be used only to review (1) whether the court has jurisdiction of the crime and the person of the

---

1. At New's preliminary hearing, Black Bear admitted that he and White Horse perjured

themselves at White Horse's trial to save White Horse and to "get back" at New.

defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights.

*Flute v. Class*, 1997 SD 10, ¶ 8, 559 N.W.2d 554, 556 (citing *Weiker v. Solem*, 515 N.W.2d 827, 830 (S.D.1994)). Fact determinations will only be disturbed upon a showing that they were clearly erroneous. *Loop*, 1996 SD 107, ¶ 11, 554 N.W.2d at 191. The habeas applicant has the initial burden, by a preponderance of the evidence, to prove entitlement to relief. *Lien*, 1998 SD 7, ¶ 11, 574 N.W.2d at 607 (citations omitted). We may affirm the ruling of the habeas court if it is "right for any reason." *Satter v. Solem*, 458 N.W.2d 762, 768 (S.D.1990) (citing *State v. McCafferty*, 356 N.W.2d 159 (S.D.1984)).

[¶ 6.] Also, when examining an ineffective assistance of counsel claim, we use the following standard of review:

Whether a defendant has received ineffective assistance of counsel presents a mixed question of law and fact. *Lykken v. Class*, 1997 SD 29, 561 N.W.2d 302. In the absence of a clearly erroneous determination, we defer to the habeas court's findings of fact regarding what counsel did or did not do, but we may substitute our own judgment "as to whether defense counsel's actions or inaction's constituted ineffective assistance of counsel." *Lykken*, 1997 SD 29 at ¶ 6, 561 N.W.2d at 304–05 (quoting *Aliberti v. Solem*, 428 N.W.2d 638, 640 (S.D. 1988)).

*Lien*, 1998 SD 7, ¶ 12, 574 N.W.2d at 607.

### Analysis and Decision

[¶ 7.] South Dakota adheres to the test for ineffective assistance of counsel announced in *Strickland. See Jones v. State*, 353 N.W.2d 781 (S.D.1984). In *Strickland*, the United States Supreme Court stated:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S.Ct. at 2064; *see also Phyle v. Leapley*, 491 N.W.2d 429 (S.D. 1992), *clarified in Hopfinger v. Leapley*, 511 N.W.2d 845 (S.D. 1994) (petitioner must show counsel error was serious enough to deprive petitioner of a fair trial with a reliable result). The burden is on the petitioner to present evidence to prove prejudice. *Hofer v. Class*, 1998 SD 58, ¶ 9, 578 N.W.2d 583, 585; *Phyle*, 491 N.W.2d at 432; *Ashker v. Solem*, 457 N.W.2d 473, 476 (S.D.1990). The petitioner must overcome a strong presumption that counsel was competent. *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986). It is not the function of this Court to "second-guess the tactical decisions of the trial attorney, nor will we substitute our own theoretical judgment for that of defense counsel; but this [C]ourt should not hesitate to reverse a conviction if the record reveals that a defendant was not afforded effective assistance of counsel." *Jones*, 353 N.W.2d at 784 (citing *Grooms v. State*, 320 N.W.2d 149 (S.D.1982)). Nevertheless, we need not determine the sufficiency of counsel's performance before examining whether the defendant was prejudiced by "alleged deficiencies." *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069. "If it is easier to dispose of an ineffectiveness claim on the

ground of lack of sufficient prejudice, ... that course should be followed." *Id.*

### 1. Acquittal of Codefendant—Opening the Door

[¶ 8.] New argues that Molstad first failed to properly object to the admission of evidence of White Horse's acquittal and then "opened the door" to allow it in. He asserts that Molstad correctly moved to exclude this evidence, but his reasons for seeking exclusion were flawed and unresearched. Molstad's argument was that evidence of White Horse's acquittal could bolster his credibility with the jury and unduly prejudice New. Molstad did not cite authority to the trial court to support the motion. New argues that this was ineffective assistance of counsel because "any reasonably competent defense attorney would have searched for authority to buttress his position on this crucial issue." Had Molstad completed even minimal research, claims New, he would have discovered precedent stating that an acquittal of a codefendant or an accessory is inadmissible hearsay pursuant to SDCL 19–16–4.[2] Further, New notes that on five separate occasions, Molstad failed to object to the evidence of White Horse's acquittal as inadmissible hearsay. According to New, these deficiencies combined to prevent him from getting a fair trial based on the evidence against him, rather than on a "process of elimination." The habeas court found that Molstad's decisions were "reasonably related to sound trial strategy and did not fall below the standard of reasonableness."

[¶ 9.] We must gauge whether, under the *Strickland* standard, Molstad's representation on this point was deficient.

Scrutinizing the situation facing Molstad at the time of trial, we cannot say his representation fell outside reasonable professional competence. Molstad moved to exclude evidence of the acquittal. The court granted the motion, but advised: "If it comes up on cross-examination, then, of course, it's wide open." On the State's motion for reconsideration, the trial court abided by its original ruling, though it was unsure whether the evidence might somehow later become admissible. While Molstad may not have advanced every possible objection to admitting the evidence, the reasons he gave the court, undue prejudice and improper bolstering of White Horse's credibility, were legally correct. *See* SDCL 19–12–3 (Rule 403).[3] An attorney is not expected to advance every possible basis to support an evidentiary objection, especially after a court grants counsel's motion, relying on one of the reasons counsel gave. Would it be reasonable or efficient to expect an attorney to go back and research a previous argument successfully made? Perhaps Molstad could have proceeded differently or based his objection on the acquittal rule; however, he did have a legal basis for the objection he raised.[4] Moreover, he lodged a standing objection to the admission of White Horse's acquittal.

[¶ 10.] In any event, the evidence of White Horse's acquittal was admitted, not due to failure to raise proper legal grounds for an objection, but because the trial court ruled Molstad broached the issue during his opening statement. *See New,* 536 N.W.2d at 718 (acquittal admitted after "references made by New's attorney in opening statement that White Horse was involved in Mousseaux's

---

**2.** SDCL 19–16–4 provides: "Hearsay is not admissible except as provided by law or by chapters 19–9 to 19–18 inclusive, or by other rules prescribed by the Supreme Court." *See also Freeman v. Class,* 95 F.3d 639, 642–43 (8thCir.1996).

**3.** SDCL 19–12–3 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the

danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

**4.** Under the acquittal rule one cannot offer as evidence the acquittal of a codefendant to prove the other co-defendant is not guilty.

death."). A diligent advocate could hardly have done otherwise. In finding a workable trial strategy, Molstad was faced with a thorny problem. White Horse had been acquitted, yet Molstad wanted to show that White Horse and Black Bear were the true murderers. This was certainly a reasonable approach, as it appeared to Molstad that White Horse's acquittal was the product of perjury. There were two murder weapons but three people at the scene, suggesting that one may have been a bystander. Molstad also sought to impeach White Horse by showing that he had pleaded guilty to being an accessory. Even if Molstad had found additional legal grounds to preclude admission of White Horse's acquittal, it may not have dissuaded the trial court from admitting it. Failed trial strategy is not equivalent to ineffective assistance. *See generally Hofer*, 1998 SD 58, 578 N.W.2d 583.

[¶ 11.] In certain instances, this Court has found an attorney's performance deficient. In *Jones*, trial counsel, outside the defendant's presence, was warned by the trial judge that counsel's "conduct was close to contempt of court, that his strategy was about to open the door to evidence which was irrelevant and prejudicial to his client, and that he was on 'very dangerous grounds.'" 353 N.W.2d at 783. We found that Jones did not have the advice of effective legal counsel; therefore, we reversed the conviction and remanded for a new trial. *Id.* at 786.

[¶ 12.] In *Wayrynen v. Class*, 1998 SD 111, 586 N.W.2d 499, we examined the conviction of defendant Wayrynen on thirteen counts of arson and two counts of attempted arson. *Id.* ¶ 6, 586 N.W.2d 499. Wayrynen was sentenced to seventy-five years in prison. *Id.* ¶ 7, 586 N.W.2d 499. We found counsel was deficient when he failed to warn Wayrynen of the 140 year maximum sentence she could face, never discussed with Wayrynen the possibility of withholding her identity from law enforcement while he negotiated a plea agreement with the State, and made no attempt to limit the number of charges brought against her. *Id.* ¶ 20, 586 N.W.2d 499. This was especially egregious because the attorney knew of the unavailability of a sentencing cap in the circuit. *Id.*

[¶ 13.] Most recently, in *Sund v. Weber*, 1998 SD 123, 588 N.W.2d 223, we found ineffective assistance when counsel failed to inquire of known witnesses, and did not call important witnesses at trial. *Id.* ¶ 30, 588 N.W.2d 223. Also, until the day before trial, counsel had spent only thirty minutes preparing. *Id.* ¶ 19 n. 3, 588 N.W.2d 223. We found that counsel's actions prejudiced the defendant and remanded for a new trial. *Id.* ¶¶ 30, 31, 588 N.W.2d 223.

[¶ 14.] The facts here are not comparable to these cases. Molstad made timely, proper objections. He called relevant witnesses and adequately prepared for trial. When he could not keep it out, he attempted to use the acquittal to impeach White Horse's credibility, and did get White Horse to admit that he lied at his trial. Molstad also brought out the conspiracy between Black Bear and White Horse to "frame" New for Mousseaux's murder. Molstad offered an adequate defense, probably the only one reasonably presented by the facts. In the end, Molstad convinced the jury to hand down a second-degree murder conviction, rather than a first-degree murder verdict. New was also acquitted of kidnapping. Faced with convoluted facts and difficult witnesses who were not averse to perjuring themselves, Molstad presented a coherent defense. His actions did not fall below the *Strickland* standard.

[¶ 15.] Even if Molstad's representation was deficient in some manner, New also must show that he was prejudiced by Molstad's ineffective assistance. New fails to meet this burden. First, New has not shown that, had hearsay been raised as the legal rationale for excluding the acquittal evidence, the trial court would have not allowed it in either on rebuttal or under some exception to the hearsay rule. Sec-

ond, even if Molstad's opening statement and cross-examination would not have led to the admission of White Horse's acquittal, New has not established that the trial would have had a different outcome. The other evidence against New was quite persuasive; the jury could have relied on it alone to arrive at its verdict. Specifically, Rita Reber testified that New and Mousseaux had an argument at her home before the murder. She told the jury that New, White Horse, and Black Bear later returned to her house without the victim and that New tried to call his father to "say good-bye." Also, Rodney Young, New's cellmate at the Pennington County Jail, testified that New admitted getting into an argument with Mousseaux at Reber's home, and hitting Mousseaux with a hammer. Based on the foregoing, even if Molstad's actions were deficient, it cannot be said that New's conviction "resulted from a breakdown in the adversary process that renders the result unreliable." The outcome probably would have been the same.

### 2. Instruction Explaining Acquittal of Codefendant

■ [¶ 16.] New next claims that Molstad's representation was deficient because he did not request an instruction informing the jury that White Horse's verdict of not guilty was not necessarily a finding of innocence, but merely an indication that guilt was not proved beyond a reasonable doubt. The acquittal, contends New, gave the jury the impression that White Horse, was, in fact, innocent. If the jury believed White Horse was innocent, New asserts, then there would be no possible guilty individual other than New, since Black Bear had already been convicted and White Horse acquitted. New argues that this inference deprived him of a fair trial. The habeas court found that Molstad's actions did not deprive New of the assistance of effective counsel.

[¶ 17.] Simply from reading the instructions in New's case, jurors would understand that an acquittal could be based on reasonable doubt, not absolute innocence. We see no prejudice from the absence of the limiting instruction. In our view, Molstad's cross-examination adequately attacked White Horse's credibility. We conclude that New was not prejudiced by Molstad's failure to request an instruction explaining the significance of White Horse's acquittal.

### 3. Codefendant's Other Homicide

■ [¶ 18.] New claims Molstad disregarded evidence that White Horse participated in another murder. White Horse allegedly made repeated admissions about beating to death a person named Dale Williams. This evidence, according to New, could have been used to impeach White Horse's testimony about his role in Mousseaux's death ("reverse 404(b) evidence"). New asserts that "any reasonably competent attorney would have questioned White Horse at trial about killing Dale Williams just weeks earlier. Failure to do so cannot be fairly explained." Molstad, at the habeas hearing, testified he did not offer this evidence, as he was concerned about its admissibility. New argues that his does not "justify entirely disregarding the evidence."

[¶ 19.] At the time of trial, no charges were pending against White Horse for Williams' death. Molstad was uneasy about the admissibility of the evidence and did not want a "trial within a trial." He also worried that the jury might disregard the whole matter as immaterial. Although "reverse 404(b)" evidence is admissible under the Federal Rules of Evidence,[5] we conclude, as the habeas court did, that failure to offer this prior act evidence did not adversely affect the result of New's trial, given the totality of the circumstances. First, inculpating White Horse in

---

**5.** Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 100, at 543–44 (2d ed 1994): "Under FRE 404(b), such proof is admissible against the defendant and ... defendants can offer 'reverse 404(b)' evidence to implicate an outsider." *Id.*

this murder or any other murder would not necessarily exculpate New. Showing that White Horse killed before may have only implanted in jurors' minds the belief that New associated with murderous individuals like himself. Second, regardless of whatever impeachment value evidence of White Horse's other murder may have had, as we have previously noted, both Reber's and Young's testimony against New was highly implicating. Third, whether the trial court would have admitted this evidence over the State's objection is speculative. *See, e.g.,* SDCL 19–12–3 (Rule 403)(allowing the exclusion of relevant evidence if prejudicial, misleading or cumulative). Moreover, we conclude that Molstad's lack of cross-examination on this point, even if deficient, was not sufficiently prejudicial to deny New effective assistance of counsel under *Strickland.*

### 4. Potential Impeachment of Black Bear

[¶ 20.] New asserts that before trial Molstad received psychological reports indicating that Black Bear may not be able "to tell the truth" and had a propensity to hurt others and seek revenge against those he felt wronged him. Molstad, however, did not use this information to impeach Black Bear's credibility. This, claims New, deprived him of the effective assistance of counsel.

[¶ 21.] Molstad had a legitimate reason to avoid magnifying Black Bear's penchant for perjury and revenge. It could have worked to discredit any testimony Black Bear gave, some of which was helpful to New's defense. Specifically, Molstad wanted to emphasize White Horse's participation in Mousseaux's murder. If the jury doubted Black Bear's testimony, it may have concluded Black Bear was lying about White Horse's involvement in Mousseaux's death, thus debasing one of Molstad's core defense strategies. Molstad sought to impeach Black Bear only to demonstrate that White Horse and Black Bear conspired to get a favorable verdict for White Horse during his trial. This would tend to implicate White Horse and Black Bear in Mousseaux's death and could create reasonable doubt over New's involvement. We think this was reasonable trial strategy. In hindsight, New now claims he was prejudiced by the exclusion of this evidence, but at the time, its presentation may have damaged his defense. Further, as the State argues, introduction of this evidence would have been cumulative, as Black Bear's direct examination testimony revealed his propensity to lie. New suffered no prejudice from Molstad's failure to impeach Black Bear using the psychological evidence.

### 5. Failure to Object to Codefendants' Guilty Pleas

[¶ 22.] New contends that Molstad failed to object to the admission of the guilty pleas of Black Bear and White Horse. The habeas court, however, found that Molstad's actions constituted reasonable trial strategy. In *Boykin v. Leapley,* 471 N.W.2d 165, 168 (S.D.1991) we wrote: "Generally, a conviction of another involved in the same criminal enterprise is not admissible for the purpose of establishing guilt." (citing *State v. Brown,* 285 N.W.2d 848 (S.D.1979); *State v. Bachelor,* 67 S.D. 259, 291 N.W. 738 (S.D.1940)). It can be used, nevertheless, for impeachment purposes. *See* SDCL 19–16–26. Impeaching the credibility of both White Horse and Black Bear, at least to a certain extent, was valid trial strategy; therefore, it was reasonable for Molstad to not object to this evidence. Had Molstad objected to the evidence and if the trial court had held it inadmissible, Molstad's trial strategy would have been compromised. Molstad wanted the jury to infer New's innocence by implicating White Horse and Black Bear as partners in Mousseaux's death. By objecting to the admission of the guilty pleas, Molstad would have lost evidence he needed to show both White Horse's and Black Bear's involvement in the murder. Further, New again fails to establish how

the outcome of his trial would probably have been different had the objections been made.

### 6. Failure to Request Cautionary Instruction

[¶ 23.] Next, New contends Molstad failed to request an instruction to limit the jury's consideration of Black Bear's guilty plea and White Horse's acquittal and guilty plea as an accessory. New asserts this instruction was necessary "because the existing instructions did not explain the purpose for which the evidence could or could not be used." He argues that without proper instruction, the jury could use White Horse's acquittal and plea and Black Bear's guilty plea as evidence of New's guilt. New's premise is that a competent attorney would have requested such an instruction and the failure to do so deprived him of a fair trial. The habeas court rejected this argument, and we conclude that even if failure to request the instruction was somehow deficient, New has failed to establish the requisite prejudice.

### 7. Cumulative Effect of Errors

[¶ 24.] Finally, New claims that when the trial is examined in its totality, "this case presents a picture of an attorney not particularly experienced in criminal law who was thrust by court-appointment into a capital murder case without sufficient experience to deal effectively with the difficult judgments that such a case necessarily entails." Molstad did have prior felony experience, but experience is not the standard. We measure counsel's performance against the "reasonable attorney," not by past credits, be they long or short.

[¶ 25.] New maintains that the cumulative effect of Molstad's errors undermined the reliability of the jury verdict because New was not convicted based on the evidence, but rather on the outcomes of the White Horse and Black Bear cases. We decline to accept New's characterization. Having found no one issue sufficient to declare Molstad's representation deficient or prejudicial, we cannot now say that the sum of any errors requires a new trial.

[¶ 26.] Affirmed.

[¶ 27.] MILLER, Chief Justice, and AMUNDSON and GILBERTSON, Justices, concur.

[¶ 28.] SABERS, Justice, concurs in result.

SABERS, Justice (concurring in result).

[¶ 29.] The majority opinion states: "[h]aving found no one issue sufficient to declare Molstad's representation deficient or prejudicial, we cannot now say that the sum of any errors requires a new trial." This statement is inherently inconsistent and in error. It is not necessary under the cumulative effect theory to "find one issue sufficient," it is only necessary to find the representation deficient or prejudicial cumulatively from several issues to constitute ineffective assistance of counsel. *See Roden v. Solem,* 431 N.W.2d 665, 672 (S.D.1988) (Sabers, J., dissenting); *State v. Woodfork,* 454 N.W.2d 332, 342 (S.D.1990) (Sabers, J., dissenting). Because I agree that Molstad's representation, measured cumulatively, did not constitute ineffective assistance of counsel, I concur in result.