1997 SD 10

**Levi Duane FLUTE, Petitioner and Appellant,**

v.

**Joe CLASS, Warden, South Dakota State Penitentiary, Appellee.**

No. 19670.

Supreme Court of South Dakota.

Considered on Briefs Dec. 5, 1996.

Decided Feb. 12, 1997.

Michael W. Hanson, Sioux Falls, for petitioner and appellant.

Mark Barnett, Attorney General, Constance K. Nilles, Assistant Attorney General, Pierre, for appellee.

GILBERTSON, Justice.

[¶ 1.] Levi Flute appeals the dismissal of his petition for a writ of habeas corpus. We affirm.

**FACTS**

[¶ 2.] Flute was indicted on July 20, 1989 for aggravated assault. He was later indicted on December 28, 1989 for aggravated assault, kidnapping, first-degree robbery, first-degree burglary, and first-degree rape. Attorney Drake Titze was appointed to represent Flute in both cases. Flute eventually entered guilty pleas. He was sentenced in both cases on April 11, 1990. In the first case, Judge R.D. Hurd sentenced Flute to 15 years in prison on his conviction of aggravated assault. This sentence was filed on April 11, 1990. In the second, Judge Gene Paul Kean sentenced him to 25 years in prison on his conviction of first-degree rape and to 120 years on the kidnapping conviction. The remaining charges were dismissed, and the Judgment and Sentence were filed on April 23, 1990. Flute did not appeal his convictions or sentences.

[¶ 3.] On January 17, 1992, Attorney Titze wrote a letter to Flute, apparently in response to Flute's concerns regarding the length of his sentence and desire to get it reduced. After discussing the plea bargains offered in the case and several other matters, Titze summed up Flute's options:

There remain[ ] only two avenues for you to pursue:

1. Going to the parole board or governor for a commutation of sentence. This means asking the governor or the parole board to arbitrarily change your sentence from 120 years to some other period of time; and

2. That you apply for a writ of habeas corpus with the State Supreme Court. This would be an appeal [sic] by you to the Supreme Court to have the Supreme Court review your case to see if you were adequately represented by counsel, and to raise perhaps some of the other issues you have enumerated.

All in all, there is nothing I can do as your prior attorney in this matter. The time periods necessary to change the sentence or having a direct appeal are well gone. The only avenue remaining to you would be the habeas corpus route and the only viable issue you would have there is ineffective assistance of counsel. Obviously, if you allege ineffective assistance of counsel, I would not be the person representing you on appeal [sic].

Titze died over two years later on February 1, 1994.

[¶ 4.] Flute's first indication that he was interested in filing an application for a writ of habeas corpus appeared in a letter he wrote to the Minnehaha County Public Defender's Office on February 13, 1994, twelve days after Titze's death. Flute wrote a number of letters over the next year-and-a-half to the Public Defender seeking information regard-

ing his files and legal advice. Judge Hurd died on May 1, 1995. Flute filed his application for a writ of habeas corpus on September 8, 1995.[1] In his application, he alleged ineffective assistance of counsel and also challenged his 120–year sentence.

[¶ 5.] Following a hearing on May 1, 1996, Flute's application was dismissed as untimely filed. The court rested its decision on SDCL 21–27–3.2[2] which permits dismissal of such an application if the State has been prejudiced in its ability to respond by delay in the filing of the application, and imposes a rebuttable presumption of prejudice for delay of more than five years between the sentencing and filing of the application. Judge Srstka explained:

> I look at it this way, should of, would of or could of, the law says [the application for a writ of habeas corpus] has to be [filed] within five years or it's presumed to be prejudice. One of the judges is dead and the attorney is dead and I think that's what the law was passed for, just to handle these types of things.

Flute's application for a writ of habeas corpus was dismissed, and the court entered a certificate of probable cause. He appeals the dismissal of his application prior to a determination on the merits.

### ISSUE

[¶ 6.] **Was Flute's application for a writ of habeas corpus untimely and properly dismissed?**

[¶ 7.] Flute claims that his letter to Judge Kean on February 13, 1994, which was written within the five-year limit of SDCL 21–27–3.2 should be considered as his application for habeas corpus. In the alternative, he

claims his September 8, 1995 application should be allowed to proceed because he rebutted the presumption of prejudice to the State.

[¶ 8.] In reviewing applications for writs of habeas corpus, we are guided by a well-established standard of review:

> [S]ince the remedy is in the nature of a collateral attack upon a final judgment, the scope of review in habeas corpus proceedings is limited. . . . Habeas corpus can be used only to review (1) whether the court has jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights. Habeas corpus is not a remedy to correct irregular procedures, rather, habeas corpus reaches only jurisdictional err[or]. For purposes of habeas corpus, constitutional violations in a criminal case deprive the trial court of jurisdiction. Further, we may not upset the habeas court's findings unless they are clearly erroneous.

*Weiker v. Solem,* 515 N.W.2d 827, 830 (S.D. 1994) (quotations and citations omitted). It is against this background that we consider the procedural prerequisites to bringing a collateral attack under our post-conviction relief statutes.

[¶ 9.] Flute's application was dismissed as untimely pursuant to SDCL 21–27–3.2. It is plain from the language of the statute that its purpose is to prevent excessive delay in filing an application for habeas corpus which might unfairly limit the ability of the State to respond to such an application. *See State v. Satter,* 1996 SD 9, 543 N.W.2d 249, n. 2

---

1. As the State accurately points out in footnote 1 of its brief, Flute makes reference to an earlier 'application for habeas corpus.' "While the letter from [him] to Judge Kean does list the reasons [Flute] felt his counsel was ineffective, it was overall a request for appointment of counsel." Appellee's Brief at 4.

2. SDCL 21–27–3.2 was enacted in 1989 and provides:

   An application under this chapter may be dismissed if it appears that the state or the applicant's custodian has been prejudiced in its ability to respond to the application by delay in its filing, unless the applicant shows that the application is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances causing the prejudice occurred. It shall be presumed that the state or the applicant's custodian has been prejudiced if the application is filed more than five years after signing, attestation and filing of the judgment or order under which the applicant is held. This presumption is rebuttable pursuant to § 19–11–1.

(S.D.1996); *State v. DeNoyer,* 541 N.W.2d 725 (S.D.1995).

■ [¶ 10.] The statute authorizes (but does not mandate) the dismissal of an application for habeas corpus if "the state or the applicant's custodian has been prejudiced in its ability to respond to the application by delay in its filing, unless the applicant shows that the application is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances causing the prejudice occurred." It presumes that any delay of five years or more is prejudicial, but provides an opportunity for the applicant to rebut that presumption. However, it is clear from the words of the statute that the authority to dismiss an application rests on a determination of unfair prejudice.

■ [¶ 11.] Indeed, SDCL 21–27–3.2 is consistent with this Court's dim view of delayed efforts to obtain post-conviction relief. As we explained in *State v. Moeller,* 511 N.W.2d 803, 808 (S.D.1994):

> As the chronological and procedural challenge to a conviction becomes more removed from the conviction itself, the court must exercise decreasing scrutiny in the review of constitutional issues. There is an inverse relationship between the sensitivity of the courts to constitutional protection and the procedural and chronological distance from the original conviction. Challenges to distant convictions strike at finality, and it is of paramount importance to remember that:
>
>> One of the law's very objects is the finality of its judgments. Neither innocence nor just punishment can be vindicated until the final judgment is known. Without finality, the criminal law is deprived of much of its deterrent effect. And when a habeas petitioner succeeds in obtaining a new trial, the erosion of memory and dispersion of witnesses that occur with the passage of time, prejudice the government and diminish the

chances of a reliable criminal adjudication.

> Our highest Court noted that collateral review of a conviction extends the ordeal of trial for both society and the accused, ever-worsening during each subsequent collateral proceeding, and breeding perpetual disrespect for finality of convictions and necessarily resulting in disparagement of the entire criminal justice system.
>
> . . . .
>
> Such perpetual review gives litigants incentives to withhold claims for manipulative purposes and establishes disincentives to present claims when evidence is fresh. . . . .

(citations, quotation marks, emphasis and brackets omitted) (rejecting habeas relief 15 years after conviction). SDCL 21–27–3.2 is a legislative recognition of this need for repose in post-conviction matters.

■ [¶ 12.] Here, a period of five years and four months elapsed between the signing, attestation and filing of the last conviction and sentence (on April 23, 1990) and the filing of the application for writ of habeas corpus (on September 8, 1995). The record reveals the circuit court considered first the issue of prejudice created by the delay. The court found that prejudice would result because the deaths of trial counsel and one of the trial judges would prevent the State from rebutting Flute's version of the facts or even investigating the accuracy of his claims. The circuit court also concluded that over five years had lapsed between his conviction and the filing of his habeas application, providing additional justification for the conclusion that prejudice would result if the application were allowed to proceed to a determination on the merits.

■ [¶ 13.] On appeal, Flute renews his arguments made to the circuit court. He claims he should be deemed to have filed his application as of the first letter he wrote to the Minnehaha County Public Defender on February 13, 1994.[3] However, the statute is not ambiguous on this point: it requires that

---

3. While Flute's letter was written less than four years after his conviction, it came two years after Titze's letter advising him of his potential ineffective assistance claim and just twelve days after

the death of trial counsel (and the court questioned whether it was prompted by news of Titze's death).

the application be *filed* and not simply contemplated. His argument here was properly rejected.

[¶ 14.] Further, in assessing whether the State was unduly prejudiced by Flute's delay, the circuit court entertained his argument that "the application [was] based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances causing the prejudice occurred." The circuit court rejected any such claim and we do as well. Titze's January 17, 1992 letter expressly advised him—21 months after his convictions—that "[t]he only avenue remaining to you would be the habeas corpus route and the only viable issue you would have there is ineffective assistance of counsel." Flute's assertion he could not have known or discovered his ineffective assistance of counsel claim rings hollow. The circuit court properly dismissed as untimely Flute's application for a writ of habeas corpus.

[¶ 15.] Affirmed.

[¶ 16.] MILLER, C.J., and KONENKAMP, J., concur.

[¶ 17.] SABERS, J., concurs in part and concurs specially in part.

[¶ 18.] AMUNDSON, J., having deemed himself disqualified, did not participate.

SABERS, Justice (concurring in part, concurring specially in part).

[¶ 19.] In relation to ¶ 8, I write specially to point out that habeas corpus reaches jurisdictional error, constitutional error, all "causes" listed in SDCL 21–27–16(1) through (7) and other illegal detentions, including those resulting from failure to comply with "substantive statutory procedure." *Petrilli v. Leapley,* 491 N.W.2d 79, 86 (S.D.1992) (Sabers, J., concurring specially); *O'Connor v. Leapley,* 488 N.W.2d 421, 425 (S.D.1992) (Sabers, J., concurring specially); *Podoll v. Solem,* 408 N.W.2d 759, 761 (S.D.1987) (Sabers, J., concurring specially); *Goodroad v. Solem,* 406 N.W.2d 141, 146 (S.D.1987) (Sabers, J., concurring specially); *Security Sav.*

*Bank v. Mueller,* 308 N.W.2d 761, 762–63 (S.D.1981).