#23939-a-DG

**2006 SD 111**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                         Plaintiff and Appellee,

   v.

DUANE L. RUNGE,                         Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE RODNEY J. STEELE
Judge

\* \* \* \*

LAWRENCE E. LONG
Attorney General

KATIE L. HANSEN
Assistant Attorney General
Pierre, South Dakota                         Attorneys for plaintiff
                                             and appellee.


ROBERT G. FITE of
Fite and Pierce
Brookings, South Dakota                      Attorneys for defendant
                                             and appellant.

\* \* \* \*

ARGUED OCTOBER 2, 2006

OPINION FILED **12/06/06**

#23939

GILBERTSON, Chief Justice

[¶1.] The South Dakota Third Judicial Circuit Court entered a judgment of conviction and sentence for third offense driving while intoxicated, against Duane L. Runge on December 6, 2005. The court amended and filed the judgment of conviction and sentence on December 27, 2005. A sentence of 18 months in the South Dakota State Penitentiary was imposed. We affirm.

## FACTS AND PROCEDURE

[¶2.] At approximately 9:20 p.m. on January 5, 2005, Duane L. Runge (Runge) stopped at the 22nd Avenue fire station in Brookings, South Dakota. He had noticed that the pickup truck belonging to his friend Jeremy Jensen (Jensen), a volunteer fireman, was parked there with its lights on. Runge pulled his pickup into the station and parked at about the same time volunteer fireman William Rupp (Rupp) was arriving. Runge exited his pickup, approached Rupp and inquired into what was going on. Rupp told Runge that there was a live fire call taking place and that he would have to move his vehicle because it was blocking one of the fire station's overhead doors. Runge returned to his pickup and proceeded to move it from the 22nd Avenue side of the fire station around to the station's north side. Runge once again exited his pickup, this time entering the fire station.

[¶3.] Once inside Runge again asked what was going on at the fire station. Rupp and other volunteer firemen present at the station explained that there was a live fire call taking place. Runge inquired as to the whereabouts of Jensen. Runge was told that Jensen was at the fire call. Runge indicated that he was concerned about the lights remaining on the Jensen's unattended pickup truck and asked if he could shut them off. Rupp and the other firemen did not know Runge and told him

-1-

to stay away from Jensen's vehicle. By this time, Rupp and the others observed that Runge smelled of alcohol, had slurred speech, and stumbled as he walked about. Runge remained inside the fire station for several minutes after he was refused access to Jensen's pickup. Eventually he was told to leave. Runge then left the fire station, got into his pickup, and drove away.

[¶4.]        At about the same time Runge was leaving, Jayson Lenander (Lenander), another volunteer fireman, was arriving at the fire station. Lenander observed that as Runge was leaving the fire station, he nearly backed into a vehicle belonging to another fireman. The firemen inside the station had unsuccessfully attempted to radio the Brookings Police Department (BPD) from one of the fire trucks to request removal of an unidentified and apparently intoxicated person. Lenander was advised of the situation by the other firemen and at about 9:30 p.m. used his cell phone to call BPD to report that a suspected drunk driver had just left the fire station. Lenander relayed a description of the pickup Runge was driving, the license plate number and information about Runge's visit reported to him by others at the fire station.

[¶5.]        When Jensen returned from the fire call, Lenander handed him his cell phone and advised him to call BPD because they wanted to talk to him. By the time Jensen called at about 9:40 p.m., BPD had run the license plate and determined the pickup belonged to Runge. The dispatcher asked Jensen if he knew Runge and if so where he might have been headed. Jensen indicated he knew Runge and that he may have been headed to Jensen's apartment in Brookings at 830 Park Avenue, #9.

[¶6.]        At approximately 9:55 p.m., BPD Officer Joey Collins (Collins) heard a radio report from another BPD officer that a pickup matching the description of

Runge's was in the parking lot of the apartment building at 830 Park Avenue. Collins proceeded to the address, arriving a short time before BPD Officer Perry (Perry). Collins observed that Runge's pickup was still running. Collins and Perry went inside the building to Jensen's apartment and knocked on the door. Jensen's girlfriend Jessica Hougland (Hougland) answered. Hougland had been living at the apartment since September 2004. Collins asked if Jensen or the other tenant on the lease, Travis Anderson (Anderson), were home. Hougland responded that they were not. Collins then asked if Runge was there. Hougland responded that Runge was present and then invited the officers in while she went to get Runge.

[¶7.] Runge, who was a friend of Jensen's, appeared drinking a beer. Collins noticed that Runge's eyes were bloodshot; his face was pale; he had slurred speech; and when standing in one spot, he would sway. Collins asked Runge to accompany them outside. Runge left with the officers and went out to Collins's patrol car. After an interview and field sobriety test, Runge was arrested for third offense driving while intoxicated.

[¶8.] On October 18, 2005, the circuit court entered a finding of guilt against Runge in a bench trial. This conviction was based on the stipulated admission of transcripts of witness testimony from a February 22, 2005 preliminary hearing and a May 3, 2005 suppression motions hearing from which findings of fact and conclusions of law were entered. Runge was ultimately sentenced to 18 months in the South Dakota State Penitentiary. He appeals the circuit court's order denying his motion to suppress evidence and raises the following issues:

> 1. Whether law enforcement officers had valid third-party consent to enter the apartment.

> 2. Whether Runge voluntarily consented to accompany law enforcement officers out of the apartment for a brief detention and investigation in a patrol car.

## STANDARD OF REVIEW

[¶9.] " 'A motion to suppress for an alleged violation of a constitutionally protected right raises a question of law, requiring de novo review.' " State v. Kottman, 2005 SD 116, ¶9, 707 NW2d 114, 118 (citations omitted). This Court gives no deference to the circuit court's conclusions of law and applies the de novo standard. State v. Schouten, 2005 SD 122, ¶9, 707 NW2d 820, 822 (citations omitted). We review the circuit court's factual determinations under the clearly erroneous standard. State v. Aaberg, 2006 SD 58, ¶8, 718 NW2d 598, 600 (citations omitted). The circuit court's application of a legal standard to the facts, once determined, is fully reviewable by this Court. *Id.* (citations omitted).

## ANALYSIS AND DECISION

[¶10.] **1. Whether law enforcement officers had valid third-party consent to enter the apartment.**

[¶11.] Runge argues that BPD Officers Collins and Perry did not have valid consent to enter Jensen's apartment at 830 Park Avenue, #9. Neither of the parties on the lease were at home when Collins and Perry arrived at the apartment. Runge asserts that Hougland, who was not on the lease, did not have the authority to consent to the BPD officers' entry into the apartment. Alternatively, he contends that no consent was asked for by BPD officers and that none was given by Hougland.

[¶12.] A warrant is generally required for conducting an on-premise search; however, there are exceptions to this requirement. State v. Fountain, 534 NW2d

-4-

859, 863 (SD 1995) (citing Schneckloth v. Bustamonte, 412 US 218, 219, 93 SCt 2041, 2043, 36 LEd2d 854, 858 (1973); Katz v. United States, 389 US 347, 357, 88 SCt 507, 514, 19 LEd2d 576, 585 (1967); State v. Almond, 511 NW2d 572, 574 (SD 1994))).  One exception is when law enforcement officers obtain consent to search. State v. Meyer, 1998 SD 122, ¶24, 587 NW2d 719, 724.  Consent is valid if given voluntarily by someone with authority.  *Id.* (citing State v. Benallie, 1997 SD 118, ¶11, 570 NW2d 236, 238).  Whether consent is given voluntarily must be viewed within the totality of the circumstances.  *Benallie*, 1997 SD 118, ¶10, 570 NW2d 236, 238 (citing State v. Krebs, 504 NW2d 580, 587 (SD 1993)).  The State must prove by a preponderance of the evidence that consent was voluntarily given.  State v. Akuba, 2004 SD 94, ¶13, 686 NW2d 406, 412-13.

[¶13.]          Consent to search a premises can be obtained from either an owner or a third party with *common authority* over the premises.  State v. Guthrie, 2001 SD 61, ¶55, 627 NW2d 401, 423 (citing Illinois v. Rodriguez, 497 US 177, 181, 110 SCt 2793, 2797, 111 LEd2d 148, 156 (1990)).  In *United States v. Matlock,* the United States Supreme Court determined that common authority is not implied from a mere property interest.  415 US 164, 171 n7, 94 SCt 988, 993 n7, 39 LEd2d 242 n7 (1974).  The authority justifying third-party consent does not arise out of property law.  *Id.* (citing Chapman v. United States, 365 US 610, 81 SCt 776, 5 LEd2d 828 (1961) (holding that a landlord could not validly consent to the search of a house he had rented to another); Stoner v. California, 376 US 483, 84 SCt 889, 11 LEd2d 856 (1964) (holding that a night hotel clerk could not validly consent to the search of a customer's room)).  Rather the common authority validating third-party consent is

grounded in the mutual use of the property by persons generally having joint access or control for most purposes. *Id.*

[¶14.] At the motions hearing, Hougland testified that sometime after Runge arrived at the apartment, she heard a knock at the door. When she answered the door, Officers Collins and Perry were standing in the hall. Hougland then testified to the following exchange with Collins:

> He asked if Jeremy [Jensen] was there, and I said no, and he had a roommate at the time, and he asked if he was there, and I said no, and he asked if Duane Runge was there, and I said yeah, and I invited him in, and I went and got Duane.

[¶15.] Collins testified that Perry and he walked in with Hougland when she went to get Runge. No evidence was presented that Collins or Perry made any threats or exercised any coercion to gain access to the apartment. The circuit court entered in its findings of fact following the motions hearing that an invitation to enter the apartment was extended by Hougland to Collins and Perry.

[¶16.] Hougland also testified at both the preliminary and motions hearings that she had been living at the apartment since the end of September 2004. She had stayed each night at the apartment since that time and kept clothing there. She was taking a shower when Runge came into the apartment on January 5, 2005. Her father who was a BPD officer, called her that night at the apartment to check on her after learning that BPD officers had been dispatched to that address. Hougland kept no other residence.

[¶17.] Jensen also testified at the motions hearing. He too indicated that Hougland had lived at the 830 Park Avenue apartment continuously since

September of 2004. Jensen stated that although Hougland did not share in the expenses, she lived at the apartment "full time." She had permission to invite people in as needed and that the apartment "was considered her residence." The circuit court subsequently stated in its memorandum opinion on the motion (which it incorporated by reference into its findings) that Hougland had been living with Jensen at the 830 Park Avenue apartment since September of 2004.

[¶18.] Based on the record, we must defer to the circuit court's finding that Hougland issued an invitation to Collins and Perry to enter the apartment. This invitation constituted a valid consent for Collins and Perry to enter the apartment. In addition, there is nothing in the record to indicate that Hougland's invitation to the officers was involuntary. Finally, as a full-time resident of the apartment for over three months, Hougland also had the authority to consent to the officers' entry. We therefore affirm the circuit court's conclusion on this issue.

[¶19.]     **2.**     **Whether Runge voluntarily consented to accompany law enforcement officers out of the apartment for a brief detention and investigation in a patrol car.**

[¶20.] Runge argues that he did not voluntarily consent to accompany BPD Officers Collins and Perry out of the 830 Park Avenue apartment. Runge claims he did not feel that he had any choice but to accompany the officers. Runge stated at the suppression motions hearing that Collins started to become agitated when Runge questioned the reason why the officers wanted him to accompany them to their patrol car. He stated that he agreed to go with the officers because he was afraid that he would be restrained and physically removed if he did not comply. Runge also claims that after exiting Jensen's apartment into the common hallway,

he continued to follow the officers out of the building as the three conversed because again he felt he had no choice. However we note, the circuit court found Runge's testimony not to be credible.

[¶21.]     Collins testified at the preliminary hearing that he had no problem with Runge. Collins indicated that once inside Jensen's apartment, he asked Runge to come with him to the patrol car and that Runge agreed. Moreover, Collins stated that once Runge was at the patrol car he agreed to submit to a field sobriety test.

[¶22.]     Hougland testified that after Runge came out of Anderson's bedroom, he and the officers went into the kitchen and had a brief conversation while she sat in the living room. She could not hear what was being discussed. After a short time, the officers turned and walked out of the apartment and Runge followed them.

[¶23.]     The circuit court, in its Finding of Fact 17, issued after denying Runge's motion, found that he voluntarily accompanied the officers to the patrol car after Collins asked following their brief discussion in the apartment. In addition, the circuit court found that once at the patrol car, Runge when asked submitted to a field sobriety test.

[¶24.]     We cannot find any basis on which to determine the circuit court's findings clearly erroneous. Accordingly, we must defer to the circuit judge who was present to hear all of the live testimony in this case. Whether Runge personally had an expectation of privacy in Jensen's apartment is not a question necessary to consider in reviewing this case.[1]  Runge waived any right to a Fourth Amendment

---

1.     Runge raised a third issue in his brief:  whether as a frequent visitor and occasional overnight guest at Jensen's apartment he therein had an

(continued . . .)

challenge to the evidence against him, based on a claim of illegal search and
seizure, because he voluntarily consented to Collins' requests.[2]

[¶25.] Affirmed.

[¶26.] SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices,
concur.

---

(. . . continued)
   expectation of privacy.

2. Runge also raised a fourth issue in his brief: whether he could be seized from
   the apartment based upon a reasonable suspicion that he was driving while
   intoxicated.

   The circuit court stated in its conclusions of law that having found Runge's
   pickup running in the apartment parking lot and based on the citizen reports
   that led BPD Officers Collins and Perry to the 830 Park Avenue apartment,
   there was reasonable suspicion to briefly detain Runge for investigative
   purposes. Based on their subsequent personal observations of Runge, the
   circuit court also concluded that the officers had reasonable suspicion if not
   probable cause to briefly detain him and investigate the report of driving
   while intoxicated.

   In its incorporated opinion the circuit court stated that the facts of the
   instant case are no different than where a defendant is encountered a short
   distance from his vehicle on a highway. The circuit court implied that under
   those circumstances reasonable suspicion of criminal activity would be
   sufficient to justify a brief detention and investigation.

   We pass on consideration of whether the circumstances of the instant case
   constitute the same type of scenario as that concluded by the circuit court.
   The issue is not determinative to the disposition of this case since Runge
   voluntarily consented to the requests of Collins. In passing on this issue
   however, we do not overlook the basic Fourth Amendment principle that
   absent consent or exigent circumstances, a private home may not be entered
   to conduct a search or effect seizure without a warrant. Steagald v. United
   States, 451 US 204, 101 SCt 1642, 68 LEd2d 38 (1981); Payton v. New York,
   445 US 573, 100 SCt 1371, 63 LEd2d 639 (1980); Johnson v. United States,
   333 US 10, 68 SCt 367, 92 LEd 436 (1948).

#23939