#24933-a-JKM

**2009 SD 44**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DONALD RAY WHITE,                                Petitioner and Appellant,

    v.

DOUGLAS WEBER, Warden of the
South Dakota State Penitentiary,
and the SOUTH DAKOTA BOARD OF
PARDONS AND PAROLES,                       Respondents and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE PETER H. LIEBERMAN
Judge

\* \* \* \*

MARK KADI
Minnehaha County Office of the
Public Advocate                                      Attorneys for petitioner
Sioux Falls, South Dakota                       and appellant.

LAWRENCE E. LONG
Attorney General

ANDREW KNECHT
Assistant Attorney General                      Attorneys for respondents
Pierre, South Dakota                              and appellees.

\* \* \* \*

CONSIDERED ON BRIEFS
ON APRIL 27, 2009

OPINION FILED **06/17/09**

#24933

MEIERHENRY, Justice

[¶1.]     Donald Ray White appeals the habeas court's decision denying his petition for habeas corpus relief on a robbery conviction in Minnehaha County.  We affirm.

[¶2.]     The underlying facts involve the robbery of a Kum & Go convenience store in Sioux Falls, South Dakota.  Earlier, the State had brought an unrelated, separate charge against White for grand theft.  The grand theft charge proceeded to jury trial (first trial) on August 9, 2004, and the robbery trial (second trial) was held sixteen days later on August 25, 2004.  Both trials resulted in a guilty verdict.  The same attorney represented White in both trials.

[¶3.]     One of White's issues in this habeas appeal concerns Juror 24, who was summoned for jury duty for both trials.  In the first trial, Juror 24 was part of the panel of prospective jurors but was not called for examination.  Juror 24 was, however, present in the courtroom during the questioning of other jurors.  In the second trial, Juror 24 was again on the panel of prospective jurors.  This time, Juror 24 was called for examination and ultimately was selected to serve on the jury.  When White's attorney examined Juror 24 during voir dire, he did not inquire if the juror knew or recognized the defendant.  White claims that his rights to due process, a fair trial, and effective assistance of counsel for the second trial were violated because Juror 24 was present during the jury selection process in White's first trial.  White also claims that Juror 24's testimony was inadmissible under SDCL 19-14-7 (Rule 606(b)).

[¶4.] Our review of habeas corpus proceedings is limited and is not "a substitute for direct review," nor "a remedy to correct irregular procedures." Steichen v. Weber, 2009 SD 4, ¶4, 760 NW2d 381, 386 (quoting Erickson v. Weber, 2008 SD 30, ¶17, 748 NW2d 739, 744). We only review: "(1) whether the court has jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) . . . whether an incarcerated defendant has been deprived of basic constitutional rights." *Id.* The applicant for habeas corpus has the initial burden to prove the need for relief by a preponderance of the evidence. *Id.* We review the habeas court's findings under a clearly erroneous standard. *Id.*

[¶5.] White first claims a due process violation because of Juror 24's presence as a prospective juror at his first trial. The Fifth and Sixth Amendments to the United States Constitution guarantee the accused the rights to due process of law and a fair trial by an impartial jury, respectively. US Const amend V, VI; *see also* US Const amend XIV. "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." Smith v. Phillips, 455 US 209, 217, 102 SCt 940, 946, 71 LEd2d 78 (1982). Further, the United States Supreme Court "has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Id.* at 215, 102 SCt at 945. In this hearing, the habeas judge must "'determine the circumstances, the impact thereof upon the juror, and whether or not [they were] prejudicial.'" *Id.* at 216 (quoting Remmer v. United States, 347 US 227, 230, 74 SCt 450, 451, 98 LEd 654 (1954)).

[¶6.]        Juror 24 was called to testify at the habeas trial. White claims that the trial court erred in allowing the juror to testify as to her thought processes during deliberations in the second trial. We find White's claim without merit. SDCL 19-14-7 (Rule 606(b)) prohibits a juror from testifying "as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions. . ." However, SDCL 19-14-7 (Rule 606(b)) also provides that "*a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.*" (Emphasis added.) We have said that a juror may testify to:

> [W]hether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. A juror may not testify about statements made during the course of the jury's deliberation nor may he testify about the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to the verdict or about his mental processes in connection with the verdict.

Shamburger v. Behrens, 418 NW2d 299, 304 (SD 1988) (quoting 11 C. Wright & A. Miller, *Federal Practice and Procedure,* §2810).

[¶7.]        Juror 24 testified that she had not realized White was the defendant in both the first and second trials until defense counsel informed her after the second trial. The State asked Juror 24 the following questions:

> **The State**: When you came in for jury duty on the second case, the one where you sat and eventually returned a verdict to the charge of robbery, did you look at the defendant in that case?
> **Juror 24**: Yeah, I saw him, yeah.
> **The State**: Did you recognize the defendant?

> **Juror 24**: I recognized him in the sense that he was, he looked familiar.
>
> **The State**: Did you think to yourself of why or how he looked familiar?
>
> **Juror 24**: Yeah, but I didn't make any connection on how I thought he looked familiar.
>
> **The State**: You never figured it out?
>
> **Juror 24**: I didn't, no.
>
> **The State**: So it wasn't someone you knew through work or anyone?
>
> **Juror 24**: I'm sorry?
>
> **The State**: He wasn't – the defendant wasn't someone that you knew through work?
>
> **Juror 24**: No. It crossed my mind, but I didn't – the name didn't sound familiar or nothing like that.
>
> **The State**: Okay. And you didn't recognize him as being the same defendant that you had been with about two weeks before in the first trial you showed up for?
>
> **Juror 24**: No.
>
> **The State**: Did there come a time when you realized that you had come in one trial and then served on another that involved the same defendant?
>
> **Juror 24**: When the defense's attorney called me and told me that, but at the time, no.
>
> **The State**: So did your appearance in court fulfill your jury obligations in the first trial have any bearing at all upon how you approached what you brought to the robbery trial?
>
> **Juror 24**: I think I fulfilled my jury duty.
>
> **The State**: But I mean, did you have any bias or prejudice or knowledge or information from the first trial that affected what you did in the second trial?
>
> **Juror 24**: No.
>
> * * *
>
> **The State**: Did you even have a discussion in your first jury service with any of the jurors that sat with you on the robbery case?
>
> **Juror 24**: No, because I didn't –

At that point, the habeas court interrupted and stopped the State from asking

further questions. Up to that point, Juror 24's testimony only dealt with whether

"any outside influence was improperly brought to bear upon any juror." *See* SDCL

19-14-7 (Rule 606(b)). The court did not allow the juror to discuss jury deliberations

-4-

or her state of mind. Consequently, the court did not err in permitting Juror 24's testimony.

[¶8.] Relying on Juror 24's testimony, the habeas court found no violation of White's constitutional right to an impartial jury. The court determined that "[Juror 24] did not have any bias of any kind as a juror in White's robbery case." The record supports the habeas court's determination. Here, the presence of Juror 24 as a member of the panel in the first trial and as a member of the jury in the second trial went unnoticed until White's petition for habeas relief. White then had the opportunity during his habeas trial to determine if Juror 24 was influenced by information she may have acquired by her presence during voir dire at White's earlier trial. Juror 24 testified at the habeas trial that she remembered very little concerning her jury duty appearance at the first trial. She did not remember the attorneys, judge, or the charged crime, nor had she learned of the verdict. She remembered thinking during the second trial that White looked familiar but could not determine why. She testified that she did not make the connection that White was also the defendant in the first trial until the defense attorney called and informed her after the conclusion of the second trial. White offered no other evidence of bias. Consequently, the habeas court did not err in finding that White failed to show that Juror 24 was biased or that White was deprived of an impartial jury.

[¶9.] White also contends that his counsel was ineffective because he failed to detect that Juror 24 was on the panel as a prospective juror in the first trial and failed to challenge the juror for cause in the second trial. "The Sixth Amendment

has long been held to mandate not simply the right to counsel but the right to *effective* counsel." *Steichen*, 2009 SD 4, ¶24, 760 NW2d at 392 (emphasis in original) (citing Strickland v. Washington, 466 US 668, 686, 104 SCt 2052, 2063, 80 LEd2d 674 (1984)). If a habeas applicant claims he has been deprived of his constitutional right to effective counsel, we view the claim as a mixed question of fact and law. *Id.* ¶23, 760 NW2d at 392 (quoting Baldridge v. Weber, 2008 SD 14, ¶21, 746 NW2d 12, 17). We review the habeas court's findings "on such primary facts regarding what defense counsel did or did not do in preparation for trial and in his presentation of the defense at trial," under a clearly erroneous standard of review. *Id.* We review de novo "whether defense counsel's actions or inactions constituted ineffective assistance of counsel." *Id.* To prove ineffective assistance of counsel, a two-part test must be satisfied:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland,* 466 US at 687, 104 SCt at 2064. We judge an attorney's performance under the standard of "reasonably competent assistance." *Id.* Under the second prong of the test for ineffective assistance, the defendant must demonstrate that the deficient performance of counsel actually prejudiced the defendant. *Id.* at 693, 104 SCt at 2067. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697, 104 SCt at 2069. Since White failed to show that the juror was biased, his claim of

ineffective assistance of counsel for failing to challenge Juror 24 is without merit, and White has shown no prejudice.

[¶10.]    The remaining issue White attempts to raise on appeal involves ineffective assistance of counsel in failing to make the proper objections to identification evidence introduced at trial.  This issue, however, is not properly before us.  The habeas court found no merit in White's claim and did not grant a certificate of probable cause as to this issue.  White contends that it was error for the court not to grant the certificate of probable cause.  According to SDCL 21-27-18.1, "[t]he issuance or refusal to issue a certificate of probable cause is not appealable."  The statute provides:

> A final judgment or order entered under this chapter may not be reviewed by the Supreme Court of this state on appeal unless the circuit judge who renders the judgment or a justice of the Supreme Court issues a certificate of probable cause that an appealable issue exists.  A motion seeking issuance of a certificate of probable cause shall be filed within thirty days from the date the final judgment or order is entered.  *The issuance or refusal to issue a certificate of probable cause is not appealable.  However, a party may, upon the circuit court judge's refusal to issue a certificate of probable cause, file a separate motion for issuance of a certificate of probable cause with the Supreme Court within twenty days of the entry of the circuit judge's refusal.*

(Emphasis added.)  Since White did not file a separate motion with this Court requesting an issuance of a certificate of probable cause, we have no jurisdiction to consider this issue.

[¶11.]    We affirm.

[¶12.]    GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and SEVERSON, Justices, concur.